ENTERED
FILED         RECEIVED
LODGED

AUG 18 2000

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY
BY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

|  |  |
|---|---|
| JACK MACKIE,<br><br>Plaintiff,<br><br>v.<br><br>BONNIE RIESER and JOHN DOE RIESER, and SEATTLE SYMPHONY ORCHESTRA PUBLIC BENEFIT CORPORATION, a Washington non-profit corporation,<br><br>Defendants. | No. C99-0331P<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This matter was tried without a jury from August 8 through August 10, 2000. The Court, having heard and considered the parties' arguments, evidence, testimony, and stipulations, hereby finds that Defendants Bonnie Rieser and the Seattle Symphony Orchestra ("Symphony") engaged in copyright infringement by using Plaintiff Jack Mackie's work "The Tango" without his authorization. The Court further finds that Plaintiff is entitled to actual damages in the amount of $1,000. The Court also awards Plaintiff his costs expended in pursuit of this litigation, excluding attorney's fees.

Pursuant to Fed. R. Civ. P. 52(a), the Court's findings of fact and conclusions of law are set forth below.

## I. Findings of Fact

A.    The Mackie Work

Between 1979 and 1982, Plaintiff Jack Mackie, along with another artist named Chuck Greening, created a series of eight sculptures that depict the steps used to perform various dances. These sculptures are embedded in the sidewalks of Broadway Avenue in Seattle's Capitol Hill

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 1

1  neighborhood. The series of sculptures is known as "Dance Steps on Broadway." One of these

2  sculptures is entitled "The Tango" (for ease of reference, the Court also refers to the Tango sculpture

3  as the "Mackie work"). A copyright notice is affixed to this work. The work was registered with the

4  United States Copyright Office on October 13, 1998. From the testimony at trial, it is apparent that

5  the "Dance Steps" series is widely regarded as an outstanding piece of public art and that Mr.

6  Mackie is well-known in the arts community as the creator of the work.

7

8  B.      The Rieser Work

9          In 1995, Defendant Bonnie Rieser, a graphic artist, received a commission from the Seattle

10  Symphony to produce eleven illustrations to be used in promoting the Symphony's 1996-97 season.

11  Ms. Rieser received $20,000 to produce all eleven works. She received no additional compensation

    from the Symphony to pay for the costs of materials to be used in producing the works.

12          One of the eleven works that Ms. Rieser created for the Symphony was derived from a

13  photograph that she took of "The Tango." Ms. Rieser manipulated the image of Mr. Mackie's work

14  and used the manipulated image in the illustration which is the subject of this litigation (the "Rieser

15  work"). Neither Ms. Rieser nor the Symphony sought or received authorization from Mr. Mackie to

16  use an image of his work.

17          The Symphony used and distributed images of the Rieser work in a number of ways to

18  promote the organization's 1996-97 Pops series. The Rieser work was: (1) included in

19  approximately 150,000 Symphony season ticket brochures; (2) placed on the cover of 12,000 copies

20  of its playbill "Encore Magazine"; (3) made into a single mounted illustration which was displayed

21  at various times; and (4) placed on the cover of approximately 2,000 blank note cards used for

22  special announcements and thank-you messages. None of these materials bore any attribution to Mr.

23  Mackie.

24          In addition, Ms. Rieser's work was featured in an article in the July-August 1997 edition of

25  the periodical "Step-by-Step Graphics Magazine," a trade publication for the graphic design industry

26

1  with a circulation of approximately 38,000. Ms. Rieser obtained 3,000 reprints of the article. She

2  circulated approximately 50 reprints with her portfolio to prospective clients and others. She retains

3  the balance of the reprints. The Step-by-Step article did not include any attribution of Mr. Mackie.

4

5  C.    Plaintiff's Damages

6      Defendants' conceded copyright infringement at trial. Therefore, the bulk of the testimony

7  and evidence concerned Mr. Mackie's alleged damages.

8      Plaintiff has presented no persuasive evidence that Defendants' use of the work has caused

9  him to lose commissions or other opportunities to license the use of his work commercially. The

   Court also finds that the Rieser work has not caused any discernible damage to Mr. Mackie's

10  professional reputation. In addition, the Court is unpersuaded that the article in "Step-by-Step"

11  magazine has caused or will cause readers of the magazine to believe that Ms. Rieser created the

12  Mackie work or owns the copyright for the work.

13      Although Mr. Mackie has authorized others to use images of his "Dance Steps" works on

14  several occasions, he has never received a license fee or other monetary compensation for the

15  authorized use of these works. However, the Court finds that the evidence presented by the parties is

16  sufficient to permit the Court to make a reasoned determination of what a willing buyer would have

17  been required to pay a willing seller for the use Mr. Mackie's work. The Court finds that the

18  testimony of Defendants' expert Gerald Rapp on this question is more persuasive and credible than

19  the testimony of Plaintiff's experts. Mr. Rapp offered his opinion that a willing buyer would have

20  paid a willing seller a price ranging from $500 - $1,000 for the use of Plaintiff's work, assuming that

21  no attribution was given to the copyright owner. Mr. Rapp's opinion regarding a reasonable price is

22  consistent with his testimony regarding the price that a stock photography house quoted for the use

23  of a photograph of a different "Dance Steps" work by Mr. Mackie. It is also consistent with his

24  extensive experience in representing artists and with numerous sales made by his firm in the past

25  year. In addition, Mr. Rapp's opinion is buttressed by the testimony of the Symphony's art director,

26

1 | who indicated that the Symphony has in the past paid relatively little for the rights to use

2 | copyrighted images of photographs and artworks in its promotional materials.

3 |      The Court does not find the testimony of Plaintiff's expert Patricia Hackett to be persuasive.

4 | Ms. Hackett offered her opinion that a reasonable price for the use of Mr. Mackie's work would have

5 | been approximately $85,000. Ms. Hackett's opinion is based in large part on her interpretation of the

6 | Pricing and Ethical Guidelines (PEGS) published by the Graphic Artists Guild, rather than specific,

7 | "real-world" examples of the sale of use rights for similar works. Ms. Hackett did not take into

8 | account what a willing buyer would reasonably pay for the use of Mr. Mackie's work, nor is the

9 | Court persuaded that her use of the PEGS represents a realistic or appropriate approach for

determining what a willing buyer would reasonably pay a willing seller for the use of Mr. Mackie's

10 | work. The Court also does not believe that the testimony of Plaintiff's expert Peggy Weiss provided

11 | any significant support for Plaintiff's damages theory. The Court further finds that there is no

12 | evidence in the record that suggests Mr. Mackie has ever received, or could reasonably expect to

13 | receive, a license fee of $85,000 for the use of an image of "The Tango."

14 |      Therefore, based on its evaluation of the evidence and testimony presented by the parties, the

15 | Court finds that a willing buyer would have been reasonably required to pay $1,000 to a willing

16 | seller for the use of an image of Plaintiff's work. This amount represents the highest price that Mr.

17 | Rapp indicated a willing buyer would pay a willing seller for the use of the work. The Court

18 | believes that the higher figure is appropriate due to Defendants' failure to provide attribution to Mr.

19 | Mackie, as well as the high regard for Mr. Mackie's work in the arts community.

20 |

21 | **II. Conclusions of Law**

22 | A.   <u>Copyright Infringement</u>

23 |      Defendant concede that they engaged in copyright infringement by using an image of Mr.

24 | Mackie's work without his authorization. <u>See, e.g.</u>, Defs.' Trial Brief, at 3 ("Defendants are not

25 | contesting that an infringement may have taken place"). Defendants have presented no evidence to

26 |

1  contest Mr. Mackie's allegations and evidence that: (1) he owns a valid copyright to his work and has

2  registered his copyright; (2) the Rieser work is derived in substantial part from the Mackie work; and

3  (3) the Mackie work was used without the copyright owner's authorization. Based on Defendants'

4  concessions and the undisputed facts, the Court concludes that Defendants' use of Mr. Mackie's work

5  constituted copyright infringement.

6

7  **B.    Damages**

   Plaintiff seeks to recover his actual damages pursuant to 17 U.S.C. § 504(b). He does not

8  seek to recover Defendant Rieser's profits, nor does he seek statutory damages.

9
   The Ninth Circuit has held that:

10
   Actual damages are defined as "the extent to which the market value of a copyrighted work
11  has been injured or destroyed by an infringement." The Ninth Circuit test for market value is
   "what a willing buyer would have been reasonably required to pay to a willing seller for
12  plaintiffs' work."

13  United States v. King Features Entertainment, Inc., 843 F.2d 394, 400 (9th Cir. 1988) (internal

14  citations omitted). As noted above, the Court has found that a willing buyer would have been

15  reasonably required to pay $1,000 to a willing seller for the right to use an image of Plaintiff's work.

16  Therefore, the Court concludes that Plaintiff is entitled to actual damages in the amount of $1,000.

17  Mr. Mackie's aesthetic and contextual objections to the use of his work, while

18  understandable, are not compensable given the standard of a willing buyer and a willing seller.

19

20  **C.    Costs**

   Section 505 of the Copyright Act provides that "[i]n any civil action under this title, the court
21  in its discretion may allow the recovery of full costs by or against any party other than the United

22  States or an officer thereof." The Court exercises its discretion pursuant to this provision to allow

23  Plaintiff as the prevailing party to recover his costs in pursuing this action, excluding attorney's fees.

24

25

26

1    Although Plaintiff's actual damages are not great, his case has merit and he should be entitled to

2    recover his reasonable costs of litigating this action.

3

4                                    **III.  Conclusion**

5            Defendants engaged in copyright infringement by using Plaintiff's work without his

6    authorization.  Plaintiff is entitled to damages which reflect what a willing buyer would have

7    reasonably paid a willing buyer for the use of Plaintiff's work.  Therefore, the Court hereby

8    ORDERS Defendants to pay Plaintiff damages in the amount of $1,000 and Plaintiff's costs in this

     action, excluding attorney's fees.
9
             The clerk is directed to send copies of these findings of fact and conclusions of law to all
10
     counsel of record.
11
             Dated:   August 18, 2000.
12

13

14                                          _____

15                                          Marsha J. Pechman
                                            United States District Judge
16

17

18

19

20

21

22

23

24

25

26

FINDINGS OF FACT AND CONCLUSIONS OF LAW – 6